In the

# United States Court of Appeals

### For the Seventh Circuit

No. 15-3494

GREGORY T. PERRY,

*Petitioner-Appellant,*

*v.*

UNITED STATES OF AMERICA,

*Respondent-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Western Division.
No. 15 cv 50220 — **Philip G. Reinhard**, *Judge.*

ARGUED OCTOBER 24, 2017 — DECIDED DECEMBER 14, 2017

Before EASTERBROOK, ROVNER, and HAMILTON, *Circuit
Judges.*

HAMILTON, *Circuit Judge.* Eight years into a lengthy prison
term, petitioner Gregory T. Perry sought to invalidate his 2007
sentence for a drug offense as unconstitutional. Perry was sen-
tenced as a career offender under the Sentencing Guidelines.
Until 2016, the career offender guideline, U.S.S.G. § 4B1.2(a),
used a definition of a "crime of violence" that included a "re-
sidual clause" that mirrored the "violent felony" definition in

the Armed Career Criminal Act of 1984, 18 U.S.C. § 924(e)(2)(B). In 2015, the Supreme Court struck down the statutory residual clause as unconstitutionally vague. *Johnson v. United States*, 135 S. Ct. 2551, 2563 (2015). That decision led Perry and others to raise similar vagueness challenges to sentences based on the residual clause in the guidelines.

In *Beckles v. United States*, 137 S. Ct. 886 (2017), however, the Supreme Court rejected those challenges to the same definition in the now-advisory guidelines. *Id.* at 890. Advice, the Court reasoned, lacks the force of law necessary for unconstitutional vagueness. Perry recognizes that he was sentenced at a time when the guidelines were deemed advisory so that *Beckles* seems to foreclose his vagueness challenge. He argues now, however, that the law of this circuit did not make the guidelines *sufficiently* advisory in 2007 when he was sentenced. We reject this argument and affirm the district court's denial of Perry's motion under 28 U.S.C. § 2255.

Perry pled guilty to conspiracy to distribute crack cocaine. The district court sentenced him to eighteen years in prison and five years of supervised release. In calculating the sentence, the judge found that Perry's prior convictions for attempted murder and attempted armed robbery made him a career offender under the guidelines. The judge imposed a sentence within the applicable guideline range. Perry did not appeal his conviction or sentence.

A reader might be forgiven for thinking there is not much question about whether attempted murder and attempted armed robbery are violent crimes. Modern federal criminal law, however, makes the problem considerably more complex. Both the statutory and guideline definitions included "elements clauses," covering crimes that have "as an element

the use, attempted use, or threatened use of physical force against the person of another." Both definitions also covered burglary, arson, extortion, crimes involving the use of explosives, and crimes that "*otherwise involve*[] *conduct that presents a serious potential risk of physical injury to another*" 18 U.S.C. § 924(e)(2)(B) (2012); U.S.S.G. § 4B1.2(a) (2006) (emphasis added). The italicized clause in both statute and guideline is known as the residual clause. The Supreme Court held in *Taylor v. United States*, 495 U.S. 575, 600 (1990), that the Armed Career Criminal Act requires courts to use the "categorical approach" in classifying a prior offense, meaning that the court looks only at the legal definition of the crime and not the actual conduct of the defendant in committing it. See *Johnson*, 135 S. Ct. at 2557. *Johnson* invalidated the statutory residual clause, explaining that the Supreme Court's "repeated attempts and repeated failures to craft a principled and objective standard out of the residual clause confirm its hopeless indeterminacy." 135 S. Ct. at 2558.[1]

The residual clause in the Sentencing Guidelines, however, survived a similar vagueness challenge in *Beckles v. United States*, 137 S. Ct. 886 (2017). Despite the identical language, the Court held that "the advisory Guidelines are not subject to vagueness challenges under the Due Process Clause." *Id.* at 890. After the Court declared the guidelines advisory in *United States v. Booker*, 543 U.S. 220 (2005), *Beckles* explained, the guidelines "merely guide the district courts' discretion." 137 S. Ct. at 894. District judges must consider the

---

[1] In 2016, in the wake of *Johnson*, the Sentencing Commission issued amendment 798 to eliminate the residual clause as part of a substantial revision of the definition of "crime of violence" in U.S.S.G. § 4B1.2(a).

advice from the guidelines, but they are free to reject that ad-
vice based on the weight of sentencing factors in 18 U.S.C.
§ 3553(a), which include the needs to reflect the seriousness of
the offense, promote respect for the law, provide just punish-
ment, provide effective correctional treatment, afford ade-
quate deterrence to criminal conduct, and protect the public
from further crimes of the defendant. 18 U.S.C. § 3553(a)(2).
Before the guidelines took effect in 1987, these broad and
sometimes contradictory principles in the statute were nearly
all that guided sentencing judges, and the Court had "never
doubted the authority of a judge to exercise broad discretion
in imposing a sentence within a statutory range." *Beckles*, 137
S. Ct. at 893, quoting *Booker*, 543 U.S. at 233. If this "unfettered
discretion" posed no vagueness problem, then the more dis-
ciplined discretion under the guidelines could withstand a
vagueness challenge. *Beckles*, 137 S. Ct. at 894.

To understand how the Sentencing Guidelines guide dis-
trict judges' discretion, it helps to revisit briefly how *Booker*
changed sentencing practices for defendants like Perry. In
*Booker*, the Supreme Court declared the guidelines "effec-
tively advisory." 543 U.S. at 245. After *Booker*, district courts
calculate a sentencing range using the guidelines but are free
to impose sentences outside the applicable guideline range,
and even outside the broader system of the guidelines, based
on the statutory factors in § 3553(a). In making individual sen-
tencing decisions, a judge may disagree with the policy
choices of the Sentencing Commission that are reflected in the
guidelines if the purposes of § 3553(a) would be better served
by a harsher or more lenient sentence. See *Booker*, 543 U.S. at
259–60, 264.

Since *Booker*, the Supreme Court has reinforced its decision that the guidelines are advisory, often in response to circuit court decisions that tried to constrain the discretion of district courts to impose non-guideline sentences. See, e.g., *Kimbrough v. United States*, 552 U.S. 85 (2007) (district judges permitted to disagree with crack v. powder cocaine disparity); *Gall v. United States*, 552 U.S. 38 (2007) (extraordinary circumstances are not needed to justify non-guideline sentence; appellate courts review sentences only for abuse of discretion).

To avoid the effects of *Booker* and *Beckles* here, Perry argues that two lines of this circuit's precedent nullified *Booker* in practice, making the career offender guideline effectively mandatory and thus subject, in his view, to his vagueness challenge. We are not persuaded. The argument mischaracterizes our precedents and our relationship with the Supreme Court in our judicial system.

First, Perry argues that when he was sentenced in 2007, this circuit applied an erroneous and rigid proportionality test that discouraged district judges from sentencing outside the guidelines. He suggests that *Gall* abrogated our decision in *United States v. Allan Johnson*, 427 F.3d 423 (7th Cir. 2005). As support, Perry notes that *Gall* reversed an Eighth Circuit decision that quoted our decision in *Allan Johnson*. The quoted passage said that a sentence outside the guideline range must be "proportional to the extent of the difference between the advisory range and the sentence imposed." *Gall*, 552 U.S. at 45, quoting *Allan Johnson*, 427 F.3d at 427. *Gall* forbade appellate courts from applying any appellate rule "that requires 'extraordinary' circumstances to justify a sentence outside the Guidelines range" or use of "a rigid mathematical formula," or a presumption that a non-guideline sentence is unreason-

able. 552 U.S. at 47. *Gall* instead required appellate courts to apply a deferential abuse-of-discretion standard of review. See *id.* at 51.

*Gall* did not appreciably modify this circuit's approach. *Gall* explained that an appellate court may "apply a presumption of reasonableness" to sentences within the guideline range and "may consider the extent" of any deviation so long as it gives "deference to the district court's decision" that other factors "justify the extent of the variance." *Id.* at 51. Furthermore, the quoted passage from *Allan Johnson* fits comfortably with the comment in *Gall*: "We find it uncontroversial that a major departure should be supported by a more significant justification than a minor one." *Id.* at 50; see also *United States v. Dean*, 414 F.3d 725, 729 (7th Cir. 2005) (imposing no formal requirement on a district judge's explanation but stating that "the farther the judge's sentence departs from the guidelines … the more compelling the justification"). We do not find in the *Allan Johnson* and *Dean* line of cases any support for Perry's argument that he was sentenced under circuit law that treated the guidelines as anything other than advisory pursuant to *Booker*.

Next, Perry points to a separate line of our cases (decided after he was sentenced) that he reads as having prohibited district courts from disagreeing with the policy behind the career offender guideline. In *United States v. Harris*, 536 F.3d 798, 812–13 (7th Cir. 2008), we said that the reasoning of *Kimbrough v. United States*, 552 U.S. 85 (2007) (sentencing judges may exercise discretion regarding crack-powder cocaine disparity in guidelines despite statutory basis for disparity), would not extend to the career offender guideline. At the same time, we

warned in *Harris* against any suggestion that the career offender guideline "is any less advisory for a district judge than the other sentencing guidelines." *Id*. at 813. We went further in *United States v. Welton*, 583 F.3d 494 (7th Cir. 2009), holding that "a district court may not disagree specifically with the statutory disparity embedded" in the career offender guideline while still cautioning that the career offender guideline remained advisory. *Id.* at 499. Just five months later, however, we overruled *Welton* and this aspect of *Harris* in *United States v. Corner*, 598 F.3d 411, 416 (7th Cir. 2010) (en banc), emphasizing that judges were as "free to disagree" with the career offender enhancement as with any other guideline. *Id.* at 416. (In response, the Supreme Court quickly vacated the judgment in *Welton* and remanded for consideration in light of *Corner*. *Welton v. United States*, 559 U.S. 1034 (2010).) Perry's argument based on this line of cases would have us reverse time's arrow by assuming that *Harris* and *Welton* applied to him even though he was sentenced before those cases' short-lived rule was announced.

Finally, we also conclude that Perry's argument would fail even if he had been sentenced under *Welton*. No mistaken circuit court decision could alter the legal force of *Booker*. Once the Supreme Court declared the guidelines advisory, they remained advisory notwithstanding some erroneous applications in the district and circuit courts. Appellate courts cannot change constitutional law established by the holdings of the Supreme Court. Only the Court itself or Congress and the States employing the Article V amendment process can do that.

If Perry thought the district judge erred by applying a mandatory enhancement, the path of direct appeal was available to him in 2007. The defendants in *Harris*, *Welton*, and *Corner* pursued just this path to correct perceived legal errors in sentencing. If Perry believed he was sentenced under a mandatory guidelines regime contrary to *Booker*, he could have appealed like the defendant in *Welton*. If he met an appellate error similar to *Welton*, he could have petitioned the court to hear his case en banc like the defendant in *Corner* or sought a writ of certiorari from the Supreme Court like the defendant in *Kimbrough*.

Because the guidelines were and remained advisory at the time of Perry's sentencing, his vagueness challenge to the career offender guideline fails as applied at his sentencing. The judgment of the district court is

AFFIRMED.